**In re Thomas C. BARATTA, Jr., Debtor.**

**Midwest Bank And Trust Co., An Illinois corporation, Plaintiff,**

**v.**

**Thomas C. Baratta, Jr., Defendant.**

**Bankruptcy No. 99–14511–9P7.**

**Adversary No. 99–710.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Nov. 15, 2001.

Michael L. Flynn, Downers Grove, IL, Jeffrey W. Leasure, Leasure & Heidkamp, P.A., Fort Myers, FL, for plaintiffs.

Frank Aloia, Jr, Kathleen W. Adams, Roetzel & Andres, Fort Myers, FL, for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in the above-captioned adversary proceeding is a claim presented by the Third Amended Complaint (Complaint) to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523. The Complaint is filed by Plaintiff, Midwest Bank and Trust Co. (Midwest) against Debtor/Defendant, Thomas C. Baratta, Jr. (Debtor). The Complaint consists of one Count and seeks a determination from this Court that a debt due and owing from the Debtor to the Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) of the Bankruptcy Code.

In its Complaint, Midwest alleges that it is a creditor of Debtor; that the Debtor owes Midwest the sum of $67,499.55, a debt incurred as a result of the use of a statement in writing by the Debtor that was materially false, respecting his financial condition, on which Midwest reasonably relied and which was published by

Debtor with the intent to deceive. Thus, pursuant to 11 U.S.C. § 523(a)(2)(B) shall be excepted from the protection of the general bankruptcy discharge. In due course, Debtor filed an Answer to the Third Amended Complaint which contained general denials.

The parties stipulated to the following undisputed facts: Debtor is a licensed attorney, and his law firm, Thomas C. Baratta, Jr. & Associates, was a tenant of a building owned by Midwest from 1988 through May 1998. Around February 1995, Debtor's law firm owed back-due rent to Midwest totaling $32,219.57. On March 1, 1995, Debtor executed a Promissory Note in favor of Midwest for the principal amount of the past due rent, $32,219.57. On August 30, 1995, Debtor, d/b/a Thomas C. Baratta, Jr. & Associates, executed a Promissory Note in the principal amount of $67,500.00 for a business line of credit, which over period of time, was used in its entirety. The maturity date on this Promissory Note was August 30, 1996.

On August 30, 1996, Debtor, d/b/a Thomas C. Baratta, Jr. & Associates, executed a Promissory Note in the principal amount of $67,500.00 with a maturity date of September 1, 1997. Debtor did not receive the proceeds on this Promissory Note as those proceeds were applied to pay the previous business line of credit loan which matured on August 30, 1996.

On August 28, 1997, Debtor provided a handwritten personal financial statement (Handwritten Financial Statement) to Midwest which showed that Debtor had no ownership interest in any real property. On the same date, Debtor, on behalf of Thomas C. Baratta Jr. & Associates, executed a Promissory Note in the principal amount of $5,000.00, with a maturity date of October 1, 1997. Neither Debtor nor his law firm received the proceeds of this loan, rather the funds referenced by the Promissory Note were applied by Midwest, internally, to other obligations due Midwest.

On September 1, 1997, Debtor, d/b/a Thomas C. Baratta, Jr. & Associates, executed a Promissory Note in the principal amount of $67,500.00 for a business line of credit loan which was to mature on September 1, 1998. Neither Debtor nor his law firm received the proceeds of the loan referenced by this Promissory Note, rather, these funds were used to pay the Promissory Note which matured September 1, 1997.

On October 1, 1997, Debtor, on behalf of Thomas C. Baratta, Jr. & Associates, executed a Promissory Note in the principal amount of $5,000.00, with a loan maturity date of December 30, 1997. Neither Debtor nor his law firm received the proceeds of the loan referenced by this Promissory Note, rather, the proceeds were used to pay the August 28, 1997 loan in the same amount which matured October 1, 1997.

On December 29, 1997, Debtor, d/b/a Thomas C. Baratta, Jr. & Associates, executed a Promissory Note in the principal amount of $4,000.00 with a maturity date of March 2, 1998. Neither Debtor nor his law firm received the proceeds of the loan referenced by the Promissory Note, rather, Midwest applied the proceeds, internally, to pay other obligations Debtor or the law firm owed Midwest.

On February 2, 1998, Debtor, d/b/a Thomas C. Baratta, Jr. & Associates, executed a Promissory Note in the principal amount of $9,000.00 with a loan maturity date of June 2, 1998. Neither Debtor nor his law firm received the loan proceeds referenced by the Promissory Note, rather, the proceeds were used by Midwest to consolidate and pay the $5,000.00 loan which matured December 30, 1997 and the

$4,000.00 loan which was to mature March 2, 1998.

Each of the eight (8) Promissory Notes were business loans for the law firm of Thomas C. Baratta, Jr. & Associates. Each of the eight (8) Promissory Notes were collateralized with the business assets of Thomas C. Baratta, Jr. & Associates, namely, a blanket assignment of accounts, inventory, machinery and equipment, furniture and fixtures and general intangibles. Midwest recorded a UCC–1 Financial Statement perfecting a lien on the Debtor's business assets.

On May 27, 1993, Debtor and Nancy Baratta, husband and wife, purchased the real property located at 5834 Cinzano Court, Naples, Collier County, Florida. On June 3, 1993, Debtor quit-claimed to Nancy Baratta his interest in the real property located at 5834 Cinzano Court, Naples, Collier County, Florida. On June 3, 1993, Debtor quit-claimed to Nancy Baratta his interest in the real property located at 110 Siena Way, #206, Naples, Collier County, Florida.

The foregoing undisputed facts can be summarized as follows:

| DATE | 1988 | 1993 | Feb.1995 | March 1, 1995 | Aug. 30, 1995 | Aug. 30, 1996 |
|---|---|---|---|---|---|---|
| EVENT | Baratta firm is tenant | Baratta real property purchase and conveyances | —Financial Statement 2/23/95 <br><br> —*Firm owed back-due rent* | Promissory Note | Promissory Note | Promissory Note |
| PRINCIPAL AMOUNT | | | *$32,219.57* | $32,219.57 | $67,500.00 | $67,500.00 |
| APPLIED | | | | Past due rent | Business line of credit | Previous line of credit |
| MATURITY DATE | | | | | Aug. 30, 1996 | Sept. 1, 1997 |

| DATE | Aug. 28, 1997 | Sept. 1, 1997 | Oct. 1, 1997 | Dec. 29, 1997 | Feb 2, 1998 |
|---|---|---|---|---|---|
| EVENT | —Debtor provided Handwritten Financial Statement—no interest in real property <br><br> —Promissory Note | Promissory Note | Promissory Note | Promissory Note | Promissory Note |
| PRINCIPAL AMOUNT | *$5,000.00 \** | $67,500.00 | *$5,000.00 \** | *$4,000.00 \** | *$9,000.00 \** |
| APPLIED | Other obligations due Midwest | Business line of credit to pay Promissory Note which matured Sept. 1, 1997 | Aug. 28, 1997 loan which matured Oct. 1, 1997 | Other obligations due Midwest | Consolidate and pay the $5,000.00 loan matured 12/30/97 and $4,000 loan to mature 3/2/98 |
| MATURITY DATE | Oct. 1, 1997 | Sept. 1, 1998 | Dec. 30, 1997 | March 2, 1998 | June 2, 1998 |

*\* Found dischargeable by summary judgment.*

On July 25, 2001, this Court entered on Order partially granting Debtor/Defendant's Renewed Motion for Summary Judgment and finding the following Promissory Notes and loans to be discharged: August 28, 1997 in the amount of $5,000.00, October 1, 1997 for $5,000.00, December 29, 1997 in the amount of $4,000.00 and February 2, 1998 in the amount of $9,000.00. These loans were approved by Midwest after its receipt of the new Handwritten Financial Statement dated August 28, 1997. It was conceded that this Statement did not contain any false information regarding the real property as those items were not listed. Therefore, Midwest conceded that those debts should be found to be dischargeable.

What is in dispute is the authenticity of the Financial Statement of Debtor dated February 23, 1995 and Midwest's reliance upon it. Debtor contends that this Financial Statement was signed and dated by him but not prepared by him. He claims he signed this Financial Statement when it was blank, prior to the erroneous information typed on it indicating that he still owned two parcels of real property located in Naples, Florida. Contrary to this assertion, in his Affidavit, Brad A. Luecke, President and CEO of Midwest (Mr. Luecke), stated that at no time did he receive a signed blank personal financial statement from Debtor, and that he relied upon the signed Financial Statement of Debtor dated Feb. 23, 1995 in his determination to make Debtor the loans dated March 1, 1995 for $32,219.57; August 30, 1995 for $67,500.00; and August 30, 1996 for $67,500.00. (Luecke Aff., Par. No.'s 5–7)

It is without dispute that the February 23, 1995 Financial Statement was false. This Financial Statement indicated that the Defendant owned certain real property located in Florida at 5834 Cinzano Court, having a value of $575,000.00, with a purchase price of $497,000.00 and no mortgage lien. In addition, the Financial Statement indicated that the Defendant owned real property located at 110 Siena Way, having a value of $165,000.00, with a purchase price of $117,000.00 and no mortgage lien. (Plaintiff's Exh. No. 1)

The Defendant had actually transferred his interest in those two properties to his wife by virtue of Quit Claim Deeds (prepared and signed by Debtor) dated June 3, 1993, approximately twenty months prior to the execution and delivery of the February 23, 1995 Financial Statement to Midwest. (Joint Exhibit No.'s 15 and 17)

Midwest admitted that in order to check the accuracy of the statements in the Feb. 23, 1995 Financial Statement, the only inquiry it would have done is to possibly run a standard credit bureau check, which would not show all real estate holdings. (Leucke Deposition, p. 24)

In order to prevail on a Complaint pursuant to 11 U.S.C. § 523(a)(2)(B), the Plaintiff must prove that the debt is for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

■ The Plaintiff must prove each element by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Unlike the standard for excepting a debt from discharge as a fraudulent representation within the meaning of § 523(a)(2)(A) which is *justifiable* reliance on the part of the creditor, *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the standard for excepting a debt from discharge within the meaning of § 523(a)(2)(B) requires the more demanding *reasonable* reliance on the representation to the creditor. *Id.*

■ The conclusion of reasonableness of reliance determination is a factual one which rests on the nature of the determination. *Coston v. Bank of Malvern (In re Coston),* 991 F.2d 257, 260 (5th Cir.1993) (holding that for purposes of section 523(a)(2)(B), the reasonableness of a creditor's reliance is a question of fact, which is reviewable only for clear error).

> The reasonableness of a creditor's reliance ... should be judged in light of the totality of the circumstances. The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*In re Coston,* 991 F.2d at 260.

■ Ordinarily, the duty to investigate the correctness of a financial statement of a lender who dealt with a customer of that bank for years is slight; however, if the relationship from the beginning gave a clear picture to the lender that the tenant Debtor was in financial trouble from day one, delinquent on his rent, and could never satisfy any series of promissory notes or even pay interest on the notes, clearly these signs were red flags which should have increased the level of duty to inquire and investigate. These red flags obligated Midwest to require some proof that Debtor had a cognizable interest in the real property located in Florida, either through a title search or by some documentation.

Midwest claims that it relied upon the Feb. 23, 1995 Financial Statement in approving the loans to Debtor dated August 30, 1995 in the amount of $67,500.00, and August 30, 1996 in the amount of $67,500.00. At the times those loans were made however, the Financial Statement was six months old, and one and a half years old, respectively. There was no evidence that Midwest did anything to verify that the information contained in it was correct; therefore, this was not reasonable reliance on the part of Midwest. *See First Sanlando Bank, N.A. v. Benore (In re Benore),* 108 B.R. 797 (Bankr.M.D.Fla. 1989) (holding debt dischargeable since lender did not reasonably rely upon allegedly false financial statement where lender did nothing to verify incomplete financial statement four to six months old).

The sole testimony regarding Midwest's reasonable reliance came from Mr. Brad Luecke. Mr. Luecke testified that Midwest is a small community bank which relies on the personal integrity of its customers and the truth of the Personal Financial Statements.

This case involves false statements concerning Debtor's financial condition. Reasonable reliance by Midwest is required under the circumstances; therefore, Midwest needed to adopt a more circumspect and prudent approach to lending, and lender cannot close its eyes to what is obvious. But Midwest did close its eyes to what is obvious in the presence instance. Midwest failed to conduct any prudent investigation; therefore, its reliance on the false

written statement was not reasonable under the circumstances.

This being the case, this Court is satisfied that Midwest has failed to establish with the requisite degree of proof reasonable reliance, an indispensable element of the exception set forth in § 523(a)(2)(B). For this reason Midwest cannot prevail on its claim for nondischargeability.

A separate final judgment shall be entered in accordance with the foregoing.